IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-01669-RBJ

PURAC AMERCIA INCORPORATED, a Delaware corporation,

      Plaintiff/Counter-Defendant,

v.

BIRKO CORPORATION, a Colorado corporation,

      Defendant/Counter-Claimant.

---

## ORDER

---

Before the Court is counter-defendant Purac America Incorporated's Motion for Partial

Dismissal [ECF No. 33] of counter-claimant Birko Corporation's Amended Counterclaims [ECF

No. 28]. For the reasons laid out below, the motion is granted in part and denied in part.

### I. Facts

The present dispute originated with a May 2008 Purchase and Supply Agreement

between the parties ("the Agreement").[1] Under the Agreement, Purac supplied Birko with a

blend of citric and lactic acid, known as "CL21/80." ECF No. 33-1 at 1. Birko had conceived of

the idea of selling such an acid blend for use as an antimicrobial agent in poultry, beef, and other

meat processing. ECF No. 33-1 at 1. Indeed, Birko alleges, it invested time and money in

developing the application of a citric and lactic acid blend for this use, testing it, and obtaining

---

[1] In a case like the present one where a document is central to a claim and the parties do not dispute its authenticity, the Court may consider the document in ruling on a motion to dismiss. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). Because the Agreement is central to the issues raised in Purac's motion and neither party disputes its authenticity, the Court has considered it in ruling on the present motion.

approval from the U.S. and Canadian governments.  ECF No. 28 at 12 ¶¶ 4–6.  It also applied for related patents.  *Id.* at ¶ 7.  Purac terminated the Agreement on February 26, 2014.  ECF No. 28 at 14 ¶ 17.

Most relevant here are the provisions of the Agreement dealing with the time period following its termination.  The Agreement states that "[u]pon termination of this Agreement for any reason, Supplier [Purac] shall cease all use of Purchaser's [Birko's] intellectual property. Supplier shall not take any action that would negate, void or diminish Purchaser's intellectual property or its rights therein."  ECF No. 33-1 at 4.  Furthermore, Birko is the "sole and exclusive owner of the intellectual property relating to the Technology including, without limitation, patents, patent applications, trade secrets and confidential information, and trademarks, e.g., CHICXIDE, BEEFXIDE, LAMBXIDE, BEGGIEXIDE, etc."  ECF No. 33-1 at 4. "Technology" is defined to mean "the use of a blend of citric and lactic acids as an antimicrobial agent in the processing of poultry, beef, lamb and other meat products both in slaughter facilities and in subsequent wholesale and retail and food service processing of those meat products."  *Id.* at 1.

The Agreement also provides that Purac "shall keep the Confidential Information in strict confidence and shall not disclose it to any person, firm or corporation, nor use the Confidential Information for any purpose . . . other than for the specific purposes of this Agreement . . . ."  *Id.* at 4–5.  Furthermore, "[u]pon termination or expiration of [the] Agreement, [Purac] . . . shall cease all use of the Confidential information [sic]."  *Id.* at 5.  Although the Agreement does not provide a definition of "Confidential Information," it does state that "the Technology constitutes valuable trade secrets and confidential property of [Birko] and are [sic] considered 'Confidential

Information' of [Birko].  'Confidential Information' includes all such information . . . ."  ECF No. 33-1 at 4.  However, information is not confidential if it "(a) is now or later becomes generally available to the public through means not involving the breach of a duty or obligation to [Birko] or (b) is disclosed to the public by [Birko]."  ECF No. 33-1 at 4.

Birko alleges that Purac violated the provisions of the Agreement dealing with its post-termination use of Birko's intellectual property and confidential information.  Specifically, the Counterclaims allege that Purac breached the Agreement by (1) marketing and selling a citric and lactic acid blend to the U.S. antimicrobial market "when the Agreement specifically prohibits it from doing so because it is Confidential Information as defined under the Agreement and because the Agreement provides that Birko owns the intellectual property, including pending patents, associated with the use of a citric and lactic acid blend as an antimicrobial agent for carcass decontamination" and (2) using Birko's "confidential customer and costing information to compete with Birko."  ECF No. 28 at 15–16 ¶ 26(c)–(d).

According to Birko, Purac also improperly interfered with Birko's customer relationships.  ECF No. 28 at 16–18.  When Purac entered the antimicrobial market after it terminated the Agreement, it allegedly told Birko's customers that "it was legally entitled to sell CL21/80 despite the fact that Purac's contract with Birko prevents it from doing so, and . . . that Birko has no intellectual property rights in the application of a citric/lactic acid blend as an antimicrobial agent when it knew or should have known that statement was false."  ECF No. 28 at 16–17 ¶ 34.  Furthermore, Purac "intentionally represented to Birko's customers that certain large players in the anti-microbial market ha[d] switched to Purac when in fact they ha[d] not."  *Id.*

3

Purac now moves to dismiss Birko's counterclaims to the extent they are based on Purac's post-Agreement conduct.

## II.  Discussion

In reviewing a motion to dismiss, the Court must accept the well-pleaded allegations of the complaint as true and construe them in the plaintiff's favor.  However, the facts alleged must be enough to state a claim for relief that is plausible, not merely speculative.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Allegations that are purely conclusory are not entitled to an assumption of truth.  *Id.* at 681.  However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard.  *See Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

Purac moves to dismiss a portion of Birko's breach of contract claim, as well as its claims for intentional interference with a contract, tortious interference with a prospective business advantage, and unfair competition.  The Court will address each in turn.

### A.  Breach of Contract

Purac argues that Birko's breach of contract claim should be dismissed in part.  Under well-established Colorado law, "a party attempting to recover on a claim for breach of contract must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *Saturn Sys., Inc. v. Militare*, 252 P.3d

4

516, 529 (Colo. App. 2011).  In the present case, the parties entered into a Purchase and Supply

Agreement in January 2008, *see* ECF No. 33-1, and Birko alleges that it performed under the

contract, Purac materially breached the Agreement, and it suffered damages from this breach, *see*

ECF No. 28 at 15–16 ¶¶ 25, 26, 28.  Purac contends, however, that the portion of the allegations

addressing Purac's breach fail to allege facts that plausibly state a claim.

Specifically, Purac takes issue with the breach-of-contract claim to the extent it involves

Purac's post-Agreement sales of CL21/80.  In the Counterclaims, Birko alleges that Purac

breached the Agreement in part by (1) marketing and selling a citric and lactic acid blend to the

U.S. antimicrobial market, after termination of the Agreement, "when the Agreement specifically

prohibits it from doing so because it is Confidential Information as defined under the Agreement

and because the Agreement provides that Birko owns the intellectual property, including pending

patents, associated with the use of a citric and lactic acid blend as an antimicrobial agent for

carcass decontamination" and (2) using Birko's "confidential customer and costing information

to compete with Birko."  ECF No. 28 at 15–16 ¶ 26(c)–(d).  Thus the claims Purac challenges

can be divided into those premised on an unauthorized use of Birko's intellectual property, as

defined by the contract, and those involving confidential information.  The Court will address

each category in turn.

### 1. Intellectual Property

The parties disagree about whether Birko possesses rights in any "intellectual property"

under the terms of the contract.  The Agreement provides that Birko is the "sole and exclusive

owner of the intellectual property relating to the Technology including, without limitation,

patents, patent applications, trade secrets and confidential information, and trademarks, e.g.,

CHICXIDE, BEEFXIDE, LAMBXIDE, BEGGIEXIDE, etc." ECF No. 33-1 at 4. In its "Definitions" section, the Agreement defines "Technology" to mean "the use of a blend of citric and lactic acids as an antimicrobial agent in the processing of poultry, beef, lamb and other meat products both in slaughter facilities and in subsequent wholesale and retail and food service processing of those meat products." *Id.* at 1. Thus, under the terms of the Agreement, Birko is the sole owner of any "intellectual property" relating to this use of a blend of citric and lactic acids.

Thus the key question is what constitutes "intellectual property" for purposes of the Agreement. The Tenth Circuit has recently held that parties to a contract may define intellectual property rights that go beyond what is protected under federal law. *See Cellport Sys., Inc. v. Peiker Acustic GMBH & Co. KG*, 762 F.3d 1016, 1022 (10th Cir. 2014) (finding patent infringement analysis unnecessary where contract provided for royalties from license agreement). Indeed, the Agreement itself makes clear that it includes patent applications and confidential information, ECF No. 33-1 at 4, and thus the term "intellectual property" as used here encompasses more than what would be protected under patent law. *See id.* at 1023 (description of what a contractual term encompasses can be "the best kind of evidence" in determining its meaning). Moreover, although the Agreement does not define "intellectual property," the phrase is generally understood as a broad term that encompasses various types of creations of the mind. *See, e.g.*, *China: Intellectual Prop. Infringement, Indigenous Innovation Policies, & Frameworks for Measuring the Effects on the U.S. Econ.*, U.S. Int'l Trade Comm'n Inv. No. 332-514 (Nov. 2010) (citing World Intellectual Property Organization definition). For

these reasons, the Court finds that Birko can plausibly state a claim based on its intellectual property rights as defined in the Agreement.

Indeed, the Agreement states that "[u]pon termination of this Agreement for any reason, Supplier shall cease all use of Purchaser's intellectual property.  Supplier shall not take any action that would negate, void or diminish Purchaser's intellectual property or its rights therein." ECF No. 33-1 at 4.  Given the parties' understanding of what the term "intellectual property" entails, this language effectively prohibits Purac from ever selling a citric and lactic acid blend as an antimicrobial agent in the U.S. meat processing market.[2]  Birko alleges that Purac did just that.  ECF No. 28 at 15–16 ¶¶ 22, 26(c).  Thus the Court is satisfied that Birko has stated a plausible claim for relief based on its ownership of the intellectual property related to this use of a blend of citric and lactic acid.[3]

### 2. <u>Confidential Information</u>

Purac next contends that Birko's allegations involving Purac's use of its confidential information are conclusory and insufficient.  The Counterclaims allege that Purac used Birko's customer and costing information, as well as the citric and lactic acid blend itself, in violation of

---

[2] Whether such a contract is enforceable is an issue that has not been addressed by the parties (beyond a stray footnote in Purac's response), and the Court therefore does not address it here.  Additionally, the Court notes that while Purac is correct that the portion of the Agreement restricting Purac's sales of CL21/80 during the term of the Agreement invites the inference that Purac can sell the product after the Agreement is terminated, this inference is not enough to overcome the plain language in other parts of the contract prohibiting such sales.  Lastly, Purac's point that the Agreement would not refer to "additional intellectual property" that Birko might create if Purac could not sell CL21/80 in the post-Agreement period is unpersuasive.  Birko might seek additional patents or legal protections against third parties' use of the Technology.

[3] Purac's argument that Birko cannot recover on pending patents, while correct as a matter of patent law, is misplaced in this case, where the Agreement expressly defines "intellectual property" to include patent applications. *See* ECF No. 33-1 at 4.  Moreover, Purac's claim that Birko has not identified the specific "intellectual property" at issue is simply incorrect; the Counterclaims clearly allege that Birko owns any intellectual property associated with the use of a citric and lactic acid blend in the antimicrobial market.

contractual provisions prohibiting the use of "Confidential Information."  ECF No. 28 at 15–16 ¶ 26(c)–(d).

As an initial matter, the Agreement makes clear that all of this "information" is confidential.  It states that "the Technology constitutes valuable trade secrets and confidential property of [Birko] and are [sic] considered 'Confidential Information' of [Birko].  'Confidential Information' includes all such information . . . ."[4]  ECF No. 33-1 at 4.  Thus, although the phrasing is a bit odd, the contract defines the use of a citric and lactic acid blend in the antimicrobial market as "Confidential Information."  *See id.* at 4.  Moreover, the definition of "Confidential Information" appears to include any information that could be considered confidential property or trade secrets of Birko.  *See id.* at 4.  Customer and costing information would thus seem to fall into this category and, in general, is the type of information that would normally be understood to be confidential.

The Agreement goes on to provide that Purac "shall keep the Confidential Information in strict confidence and shall not disclose it to any person, firm or corporation, nor use the Confidential Information for any purpose . . . other than for the specific purposes of this Agreement . . . ."  *Id.* at 4–5.  Furthermore, "[u]pon termination or expiration of [the] Agreement, [Purac] . . . shall cease all use of the Confidential information [sic]."[5]  *Id.* at 5.  Birko alleges that Purac used its confidential information by (1) selling its own citric and lactic acid blend as an antimicrobial agent, (2) using information about Birko's customers to contact them, and (3) using Birko's pricing information to offer those customers lower prices.  ECF No. 28 at 14–16 ¶¶

---

[4] "Technology" again refers to "the use of a blend of citric and lactic acids as an antimicrobial agent in the processing of poultry, beef, lamb and other meat products both in slaughter facilities and in subsequent wholesale and retail and food service processing of those meat products."  ECF No. 33-1 at 1.
[5] Again, whether such a provision is enforceable is a matter for another day.

20, 21, 26(c)–(d).  All of these actions constitute a use of what the contract defines to be "Confidential Information," and thus the Court is satisfied that Birko has alleged facts that plausibly support a finding that Purac failed to perform its obligations under the Agreement.

In an attempt to defeat this conclusion, Purac points to the section of the Agreement that provides that information is not confidential if it "(a) is now or later becomes generally available to the public through means not involving the breach of a duty or obligation to [Birko] or (b) is disclosed to the public by [Birko]."  ECF No. 33-1 at 4.  Purac's Response argues that Birko's allegations are insufficient because they do not "specifically describe . . . how the information is actually confidential."  ECF No. 33 at 10.  However, neither case Purac cites in support of this argument is on point.  *See Greenway Nutrients, Inc. v. Blackburn*, F.Supp.3d 1224,1256 (D. Colo. Mar. 26, 2014) (faulting plaintiff for failing to identify what confidential information was disclosed, not how it was confidential); *Flsmidth Spokane, Inc. v. Emerson*, No. 1:13-CV-00490-EJL, 2014 WL 2711790, at *7 (D. Idaho June 16, 2014) (addressing claim under Idaho Trade Secrets Act).

Moreover, in ruling on a motion to dismiss, the Court must draw all reasonable inferences in the nonmoving party's favor.  Here, viewing the allegations in the Counterclaims in the light most favorable to Birko, it is reasonable to infer that none of the confidential information described above had been made available or disclosed to the public.  Birko alleges that it invested time and money in developing the application of the citric and lactic acid blend as an antimicrobial agent, testing it, and obtaining approval from the U.S. and Canadian governments.  ECF No. 28 at 12 ¶¶ 4–6.  Given these allegations, the Court infers that this use of the

"Technology" has not been made public.[6]  Similarly, the Counterclaims allege that Birko's

customer and pricing information was not confidential, ECF No. 28 at 16 ¶ 26(d), and the Court

infers from the allegations as a whole that this type of information would likely not be publicly

available.  For these reasons, the Court declines to dismiss this claim on the theory that Birko's

allegations do not explain in sufficient detail why all of this information was confidential.

## B.  Intentional Interference

Purac also moves to dismiss Birko's intentional interference claims.  The Counterclaims

include intentional interference with a contract and tortious interference with a prospective

business advantage claims, both based on Purac's alleged interference with Birko's customer

relationships.  ECF No. 28 at 16.  The Court will consider each claim in turn.

First, "[t]o be liable for intentional interference with contract, a defendant must (1) be

aware of a contract between two parties, (2) intend that one of the parties breach the contract,

and (3) induce the party to breach or make it impossible for the party to perform the contract."

*Krystkowiak v. W.O. Brisben Companies, Inc.*, 90 P.3d 859, 871 (Colo. 2004).  As Purac points

out, Birko has not alleged that a contract existed between itself and any third party, nor has it

alleged that Purac was aware of any such contract.  *See* ECF No. 28 at 16–18 ¶¶ 31–40.  The

closest it gets is a few references to "relationships" Birko has with its customers.  *See id.*

These allegations are insufficient to satisfy the elements of an intentional interference claim, and

thus Birko has failed to state a plausible claim for relief.  The Court therefore dismisses the

intentional interference with a contract claim without prejudice.[7]

---

[6] Contrary to Purac's argument in its Reply, the Court cannot assume that Birko's patent applications disclose any potentially confidential information.
[7] "In dismissing a complaint for failure to state a claim, the court should grant leave to amend freely if it appears at all possible that the plaintiff can correct the defect.  The Federal Rules reject the approach that pleading is a game of

Turning to the tortious interference with a prospective business advantage claim, Purac argues that Birko has failed to plead facts demonstrating improper interference.  Under Colorado law,

> [o]ne who intentionally and improperly interferes with another's prospective contractual relation . . . is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation.

Restatement (Second) of Torts § 766B (1979).  *See also Dolton v. Capitol Fed. Sav. & Loan Ass'n*, 642 P.2d 21, 23 (Colo. App. 1981) (adopting the Restatement as Colorado law).  Whether the interference is "improper" depends on the following factors: (a) the nature of the actor's conduct; (b) the actor's motive; (c) the interests of the other with which the actor's conduct interferes; (d) the interests sought to be advanced by the actor; (e) the social interests in protecting the freedom of the actor and the contractual interests of the other; (f) the proximity or remoteness of the actor's conduct to the interference; and (g) the relations between the parties. *Jefferson Cnty. Sch. Dist. No. R–1 v.Moody's Investor's Servs., Inc.*, 175 F.3d 848, 858 (10th Cir.1999).

Birko alleges that Purac interfered with its customer relationships by telling the customers that "[1] it was legally entitled to sell CL21/80 despite the fact that Purac's contract with Birko prevents it from doing so, and . . . [2] that Birko has no intellectual property rights in the application of a citric/lactic acid blend as a[n] antimicrobial agent when it knew or should

---

skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Triplett v. LeFlore Cnty., Okl.*, 712 F.2d 444, 446 (10th Cir. 1983).  The Court finds that, if given leave to amend, Birko could possibly correct the defects in its allegations relating to its intentional interference with contract claim, and therefore the Court declines to dismiss the claim with prejudice at this time.

have known that statement was false." ECF No. 28 at 16–17 ¶ 34. Furthermore, Purac

"intentionally represented to Birko's customers that certain large players in the anti-microbial

market ha[d] switched to Purac when in fact they ha[d] not." *Id.* Essentially, Birko contends

that Purac provided false information to Birko customers to induce them to switch to the Purac

product. The nature of these alleged actions and the underlying motive support an inference of

improper conduct. Thus the allegations are sufficient to plausibly state a tortious interference

with a prospective business advantage claim, and the Court declines to dismiss the claim on this

basis.

However, Purac also argues that Briko's allegations fail to satisfy Federal Rule of Civil

Procedure 9(b). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake." In the context of a tortious

interference claim, "the heightened pleading standard [of Rule 9(b)] only applies to the

fraudulent inducement element of the tortious interference claim." *Dawson v. Litton Loan*

*Servicing, LP*, No. 12-CV-01334-CMA-KMT, 2013 WL 1283848, at *8 (D. Colo. Mar. 28,

2013). *See also N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 14

(1st Cir. 2009) (Rule 9(b) apples where "fraudulent misrepresentation is the lynchpin" of tortious

interference claim). Birko's theory is that Purac induced Birko customers to end their

relationships with Birko by making false statements to the customers. *See* ECF No. 28 at 16–17

¶ 34. Thus, in alleging this inducement, Birko must satisfy the requirements of Rule 9(b).

To do so, it must "set forth the who, what, when, where and how of the alleged fraud," or,

in other words, "the time, place, and contents of the false representation, the identity of the party

making the false statements and the consequences thereof." *U.S. ex rel. Sikkenga v. Regence*

*Bluecross Blueshield of Utah*, 472 F.3d 702, 726–27 (10th Cir. 2006) (internal citations and quotations omitted).   In the present case, Birko has failed to allege who made the false statements to Birko customers or when and where those statements were made.   *See generally* ECF No. 28 at 11–20.   Indeed, the Counterclaims provide little information about those statements beyond alleging their content.   *See id.* at 14–15 ¶ 20, 16–17 ¶ 34.   For this reason, the allegations are insufficient under Rule 9(b), and the Court dismisses Birko's intentional inference with a prospective business advantage claim without prejudice.[8]

### C.  Unfair Competition

Lastly, Purac argues that Birko has failed to plead the elements of an unfair competition claim.   "[S]tate and federal courts applying Colorado law have consistently held that the tort of unfair competition requires, first, that the defendant has copied the plaintiff's products or services or misappropriated plaintiff's name or operations in some regard, and second, that this conduct is likely to deceive or confuse the public because of the difficulties in distinguishing between the plaintiff's and defendant's products and services."   *NetQuote, Inc. v. Byrd*, 504 F. Supp. 2d 1126, 1131 (D. Colo. 2007).   Birko argues that Purac misled customers by causing them to believe that Birko "did not have any intellectual property rights that would prevent Purac from selling CL21/80 for antimicrobial meat processing" and falsely representing that certain large Birko customers had switched to the Purac product.   ECF No. 33 at 14.   However, there is no allegation in the Counterclaims that any of Birko's conduct caused a customer any difficulty

---

[8] Birko cites to *Gilles v. Ford Motor Co.*, No. 13-CV-00357-RBJ, 2014 WL 544990, at *6 (D. Colo. Feb. 12, 2014), for the proposition that alleging the content of specific statements is sufficient to put the opposing party on notice of the claims against it.   However, in *Gilles*, the Court found that more specific dates or location information "[did] not seem any more likely to put [the defendant] on notice of the claims against it."   *Id.*   Here, the Court is convinced that more specific allegations, particularly with regard to the timing of the alleged false statements, would be more likely to put Purac on notice of the claim against it.   However, the Court also thinks it appropriate to allow Birko leave to amend to add such allegations and thus dismisses the claim without prejudice.   *See* n.6, *supra.*

in distinguishing between Birko's product and that of Purac.  *See* ECF No. 28 at 14–15, ¶ 20, 18 ¶¶ 42–43.  Thus Birko has failed to allege facts that plausibly state an unfair competition claim under Colorado law.

None of the authority Birko cites convinces the Court otherwise.  First, the language it quotes from *NetQuote* does nothing to undermine the elements of the claim quoted above.  Indeed, the court in *NetQuote* emphasized that "the tort of unfair competition in Colorado has not been expanded to provide a cause of action for any alleged improper conduct by a competitor that deceives a plaintiff or its clients.  Instead, it reaches only conduct that involves . . . deceiving or confusing the public as to the source of the business in question."  *NetQuote, Inc.*, 504 F. Supp. 2d at 1131.  Second, in the *Adolph Coors* case cited by Birko, a distributor sold Coors beer to retailers without taking the required measures to ensure its quality, potentially causing consumers to blame Coors for the low quality of the product, and thus the case is not on-point here.  Finally, Restatement (Third) of Unfair Competition § 6 deals with scenarios in which one actor "market[s] goods or services" manufactured or supplied by another; in the present case, Purac did not market Birko's product, but rather allegedly made false statements about it to Birko's customers.  *See* ECF No. 28 at 18 ¶¶ 42–43.

For these reasons, the Court is convinced that Birko could not allege facts that plausibly state an unfair competition claim even if given leave to amend.  *See Triplett v. LeFlore Cnty., Okl.*, 712 F.2d 444, 446 (10th Cir. 1983).  Thus the claim is dismissed with prejudice.

**III.  Conclusion**

Purac's Motion for Partial Dismissal [ECF No. 33] is GRANTED IN PART and DENIED IN PART.  Birko's claims for intentional interference with a contract and tortious

14

interference with a prospective business advantage are dismissed without prejudice, and its unfair competition claim is dismissed with prejudice.

DATED this 8th day of April, 2015.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge